[Crim. No. 6.   First Appellate District.—August 18, 1905.]

## THE PEOPLE, Respondent, v. GEORGE ROBERTS, Appellant.

CRIMINAL LAW—LARCENY—EVIDENCE OF CONSPIRACY—REASONABLE DOUBT—REQUESTED INSTRUCTION.—Upon the trial of a defendant charged with grand larceny, where the evidence showed that two other persons besides the defendant were concerned in and aided and abetted the defendant in the commission of the offense, it was proper to refuse a requested instruction that the prosecution must prove beyond all reasonable doubt, not only that the crime charged was committed, but also that the defendant and no one else committed the offense, and that in the absence of such proof the defendant must be acquitted.

ID.—EVIDENCE STRICKEN OUT—REQUEST EMBODIED IN CHARGE.—A requested instruction, though proper in itself, in regard to the duty of the jury not to consider testimony stricken out by the court, was not erroneously refused where it was substantially embodied in the charge given by the court.

ID.—DEFINITION OF LARCENY.—It was proper for the court in defining larceny to omit those subdivisions of section 487 of the Penal Code which have no application to the evidence.

ID.—PREJUDICIAL INSTRUCTION INAPPLICABLE TO EVIDENCE—"FRAUD, TRICK, AND DEVICE."—It was prejudicial error tending to mislead the jury to give a lengthy instruction on the subject of larceny committed by "fraud, trick and device," though correct in the abstract, where it was not according to the theory of the prosecution and was not responsive to any evidence tending to prove it, there being evidence only of an unsuccessful attempt so to obtain the money, in view of which the jury were probably confused by the instruction to the prejudice of the defendant.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   William P. Lawlor, Judge.

The facts are stated in the opinion of the court.

Samuel M. Shortridge, and Frank J. Murphy, for Appellant.

U. S. Webb, Attorney-General, for Respondent.

HALL, J.—The defendant, Roberts, was charged with and convicted of grand larceny, and this appeal is from the judgment and the order denying his motion for a new trial.

Defendant claims that the court erred in refusing to give at request of defendant the following instruction: "Not only must the prosecution prove beyond all reasonable doubt that the crime charged has been committed, but they must prove beyond all reasonable doubt that the defendant and no one else committed the offense; in the absence of such proof the defendant must be acquitted." The evidence in this case showed that two other persons besides the defendant were present and were concerned in, and aided and abetted the defendant in the commission of the offense. Under the requested instruction the jury would have been obliged to acquit the defendant although convinced that the three persons jointly and together committed the offense. Such is not the law. The instruction was properly refused.

The defendant requested the following instruction: "Offers to prove certain alleged facts which have been made in your presence are not evidence, and you should not take the same into consideration, nor allow yourselves to be in any manner influenced thereby. [Neither should the jury consider testimony stricken out by the court.]" The court refused to give the part inclosed in brackets, but gave the rest. Both propositions are sound in law, and might well have been given by the court, yet we do not think any error was committed in the refusal thereof, for the reason that the same instruction in substance was by the court given elsewhere. Thus the court said: "*The defendant is to be tried only on the evidence which is before the jury,* and not on suspicions that may have been excited by questions of counsel, answers to which were not permitted." Again it is said: "The court deems it proper to admonish you that you are not to consider evidence which has been excluded by the court in determining any fact in the case."

When the jury were told that the defendant is to be tried only on the evidence which is before the jury, they as sensible men must have understood that evidence stricken out was not before the jury, and evidence excluded may fairly be said to include evidence stricken out.

The court read to the jury as a part of its instructions section 484 of the Penal Code, defining larceny, and a portion of section 487, as follows: ''Grand larceny is larceny committed in either of the following cases: 1. Where the property taken is of the value exceeding fifty dollars,'' and continuing, instructed the jury as to larceny committed by fraud, trick, or device.

Counsel for the defendant treats this as one instruction, and objects to the first part for the reason that the court read a portion only of section 487. In answer to this it is sufficient to say that the court read all of the section that was in any way pertinent to the charge made in the information. There was no charge in the information of a larceny from the person, neither was there a charge of larceny of any article or animal, mentioned in subdivision 3 of section 487. It was therefore quite unnecessary to read subdivisions 2 and 3 of section 487.

As to the remaining portion of the instruction as to larceny by trick and device, it is not contended that it is not correct as an abstract proposition of law, but that it is suggestive and argumentative, not predicated on any evidence in the case, and not responsive to the theory of the prosecution.

In Blashfield on Instructions to Juries, it is said: ''Instructions to the jury should be applicable to and limited to the evidence adduced in the cause. It is erroneous to give instructions based on a state of facts which there is no evidence tending to prove, or which the undisputed evidence shows does not exist, and it makes no difference that such instructions contain correct statements of the law.'' (Sec. 86, citing many cases.) Again in section 91 the same writer says: ''The giving of an instruction not supported by the evidence is sufficient ground for reversal where it appears that such instruction misled, or might have misled, the jury, to the prejudice of the party complaining. Where the instructions as a whole are abstract and inapplicable to the facts in issue, the judgment will be reversed. If an instruc-

I Cal. App —29

tion submits an issue not warranted by the evidence, or is based on facts not in evidence, or is so worded as to lead the jury to infer the existence of a state of facts entirely at variance with the evidence, the error will almost invariably be considered ground for reversal." (Citing many cases.)

In *Clark* v. *State,* 32 Neb. 246, [49 N. W. 367], it was held reversible error to instruct the jury that if defendant formed a conspiracy to commit the crime, and became intoxicated to nerve himself to commit it, his intoxication would be no excuse, there being no evidence that he became intoxicated *for such purpose,* although there was evidence that he was intoxicated at the time of committing the alleged crime.

In *People* v. *Devine,* 95 Cal. 227, [30 Pac. 378], it is said: "In some cases an inapplicable instruction can do no harm, but when it is liable to mislead a jury, to the prejudice of one of the parties, it becomes as grave an error as though it were not correct as an abstract proposition of law." The trial court had read to the jury section 485 of the Penal Code, relating to larceny of *lost* and *found* property. There was no evidence of the finding of any lost property, and the giving of the instruction was held to be reversible error.

In *People* v. *Sanchez,* 24 Cal. 28, it was said: "No instruction should be given to a jury which is not predicated upon some theory logically deducible from at least some portion of the testimony. Such instructions are only calculated to confuse and mislead the jury, and ought not to be given."

In the case now under consideration the court gave a lengthy instruction of about six folios on the subject of larceny by trick and device, correct in the abstract, but, it is contended, not predicated on the evidence in the case. It therefore becomes necessary to examine the evidence on this point.

Perry, the prosecuting witness, testified that he was standing on the corner of Fourth and Market streets, San Francisco, on March 20th, when he was addressed by defendant, who asked Perry where he was from. Finding that Perry was from Los Angeles and a stranger in San Francisco, defendant represented that he also was a stranger to the city. The two agreed to visit the park and Cliff House together, but first the defendant induced Perry to go with him to 1344

Market Street by the representation that he was a mining man, and had some specimens of ore that he wished to have assayed by a friend who had an office at that place.    On getting to 1344 Market Street, Perry was, after some objection, induced to go into the building, and, after some hunting, they found the proper room, and there found that the assayer was not in, but did find two persons, claimed to be strangers, who had apparently been playing cards.    They invited Perry and defendant to join the game.    Defendant did, but Perry, though urged by defendant, refused.

On the first game defendant appeared to win, and on the second game bet what change he had, and then asked Perry for a loan of twenty dollars.    Perry refused, whereupon defendant took from his pocket a paper which he represented to be a check on a Denver bank, and showed it to the other parties playing the game.    One of them said to Perry: "It is all right; let your friend have the money; this check is all right."    Perry refused, whereupon one of the parties, called the doctor, got up and locked the door and put the key in his pocket, saying in effect that he did so for fear his wife might call and catch him gambling.    Defendant then again demanded the money, whereupon Perry said, "I suppose I am a victim, and I will have to give you the money," and took off his belt in which he carried his money, and gave defendant twenty dollars.    On repeated demands Perry gave to defendant altogether eighty dollars,—twenty dollars at a time,—all of which was bet by defendant on his hand, and on a call of hands was lost to one of the other players.    The players then disbanded and left the premises.    From all the circumstances in evidence it is certain that the three card-players were confederates.    On the question of how and why he parted with his money Perry testified as follows: "So far as the game of cards was concerned I was not connected with the game, or in any manner involved in the game, as I was not a player or participant, and made no bet.    I lost no money by betting. . . . I did not part with any of this money on the strength of that check; that had nothing to do with the parting of any of my money.    This proposition of mines, and ore and rock, that had nothing to do with my parting with any of my money.    And nobody suggested my parting with any money

on account of any mines or mining stock. I parted with $80.''

On redirect examination by the district attorney he gave testimony as follows: ''I have said the defendant asked me to lend him the money. In response to that question I did not give him any money when he asked me to lend it to him. When I gave the money to him he said: 'Let me have the money.' That was immediately after the door was locked. I did not let him have any money for the purpose of having him play a game.

''Q. You yourself took no part in the game at all, and loaned him no money for the purpose of betting? That is correct, is it?—A. Yes, sir.

''Q. Why did you hand over—take off your belt and hand over $80, $20 at a time and four different times, making $80 in all; why did you do that—hand that money to the defendant?—A. Because they made their demand repeatedly for the money, and I felt that they would take the money if I did not give it over willingly. I thought they would force me to give them the money; did not know whether they would knock me in the head or shoot me, but felt that they would take the money by force, and I gave up the money rather than take chances of being injured in any way.

''Q. Did you part voluntarily or willingly with any of your money?—A. I did not.

''Q. I understood you to say you feared; what kind of fear was it you had—of what?—A. There were three men in the room, and I did not know whether they would knock me in the head or shoot me or what. I was just afraid they would overpower me in some way, and take the money; I mean of personal injury. I did not have any weapon of any kind or character on me.''

The witness on his direct examination gave evidence of conduct and demeanor of the three card-players tending to cause him to fear an intention perhaps to use force to get the money.

From the foregoing statements of the prosecuting witness it will be seen that he completely eliminated from the case any possible grounds for the theory that he parted with his money through any fraud, trick, or device. Yet the court in the instruction complained of fully submitted to the jury

the issue as to whether the possession of the money had been parted with as the result of fraud, trick, and device. Other than the reading of section 484 of the Penal Code, defining larceny in general terms, no other explanation of what constitutes larceny was given. By the instructions of the court stress was laid almost entirely on the issue of larceny by fraud, trick, and device. While we recognize that it is not every case of giving an instruction not pertinent to the evidence that will result in the reversal of a judgment, we are of the opinion that the giving of the instruction under discussion under the circumstances of this case was prejudicial error. The fact that there was evidence in the case tending to show an *unsuccessful* attempt to obtain the money by fraud, trick, and device made it all the more probable that the jury was misled and confused to the prejudice of the defendant by the giving of this instruction.

It is claimed that the court erred in allowing proof of the forfeiture of the defendant's bail bond "owing to the unlawful absence of the defendant," but this evidence was by the court ordered stricken out.

The objection to the question put by the district attorney —"Do you understand if a man came to you on the street, and put a pistol to your head, and you handed out the money, that the money belonged to him?"—should have been sustained, but the error is too unimportant to of itself require a reversal.

As the order and judgment must be reversed for the error in giving the instruction last herein discussed it is not necessary to determine whether or not the evidence was sufficient to sustain the verdict.

The judgment and the order denying the motion for a new trial are reversed.

Cooper, J., and Harrison, P. J., concurred.